UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-CV-20777-UU

NICHOLAS DECARO

 Plaintiff,

vs.

EQUINOX HOLDINGS, INC,

 Defendant.
_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

 COMES NOW, Plaintiff, NICHOLAS DECARO, by and through undersigned counsel and pursuant to Local Rule 7.1 files his Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint [D.E. 5].

**I Background**

 This case concerns a married, male personal trainer's discrimination claims against his employer, Equinox pursuant to the Florida Civil Rights Act, sections 760.01 – 760.11, Florida Statutes (hereinafter "FCRA"). Plaintiff began working for Equinox in Los Angeles, California as a personal trainer. Subsequently he transferred to the Equinox in Miami Beach, Florida (i.e. South Beach). Throughout his tenure with Equinox, Plaintiff was a hard working employee who diligently performed all of his duties on a regular basis.

 Nicholas DeCaro started working at the South Beach location in December, 2013. Commencing in January, 2014 he was subjected to a hostile work environment by his supervisors. Specifically, Plaintiff's supervisors instructed other Equinox employees not to refer any potential new members to him. When Plaintiff complained of this unfair treatment he was

1

then subjected to verbal abuse, derogatory comments and ridicule by his supervisors, in front of other Equinox employees and members. Furthermore, Plaintiff was denied a promotion while similarly situated employees were all given promotions and otherwise treated more favorably despite the fact that Plaintiff satisfied all requirements. Subsequently, Plaintiff's supervisors then engaged in bullying behavior in an effort to have Plaintiff resign or transfer to another Equinox facility.  Equinox supervisors also threatened Plaintiff's job by telling him that he could not work in the same facility as my wife despite the fact that they knew Equinox was aware that Plaintiff was married and it knew that he and his wife worked as personal trainers at the same facility. Furthermore, company policy in fact encourages and allows family members to work in the same facility so long as they are not in a supervisory position.

On April 24, 2014 Plaintiff filed a written complaint of workplace harassment with Equinox. Upon learning of the harassment, rather than acting promptly to stop the behavior and prevent it from recurring or opening up an investigation, Equinox chose instead to retaliate against Plaintiff and terminated his employment effective April 25, 2014. At the time that Plaintiff was fired Equinox had actual knowledge of the harassing behavior that Nicholas DeCaro had been subjected to during a period of approximately five months. Based on these factual assertions, Plaintiff has brought claims against his former employer based on sexual and marital status discrimination, hostile work environment and unlawful retaliation, as well as a claim for injunctive relief pursuant to the FCRA. *See generally Complaint.*

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Court's consideration is limited to

the allegations in the complaint. *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations should be accepted as true and all reasonable inferences should be drawn in the plaintiff's favor. *Roberts v. Fla. Power & Light, Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998).

**III.    Argument**

**A.    Florida Civil Rights Act**

Whatever similarities between the two, it is clear that a claim made under the Florida Civil Rights Act is not the same cause of action as one made under Title VII. *Andujar v. National Property and Cas. Underwriters*, 659 So.2d 1214 (Fla. 4th DCA 1995). "Florida has opted for a strong policy against sexual harassment in the work place. The [Florida] Legislature passed section 760.10, a remedial statute, directed at this form of discrimination based on gender and it should be liberally, not strictly, construed." *Speedway Superamerica, LLC v. Dupont*, 933 So.2d 75, 86 (Fla. 5th DCA 2006). In addition, the FRCA states: "The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be *liberally construed* to further the general purposes stated in this section and the special purposes of the particular provision involved." Fla. Stat. sec. 760.01(3) (emphasis added).

**B.    Plaintiff's marital status discrimination claim is not based on the identity or actions of his spouse.**

Under Florida law, an employer can terminate a married individual if that status is prohibited under the employer's anti-nepotism policy. Fla. Stat. sec. 760.10(8)(d).  However, while Equinox prohibits employees from being in a position where they supervise or are supervised by a close family member, it otherwise does not prohibit family members from working in the same department and/or club.  On the contrary, Equinox's policy is to "encourage and accept applications for employment from relatives." *See Complaint at ¶ 32*. Accordingly,

Florida's anti-nepotism exception to the prohibition against marital status discrimination does apply in this case due to the simple fact that Defendant does not have an applicable anti-nepotism policy. This is not a situation in which Plaintiff was discharged based on Defendant's anti-nepotism policy.

Rather, as alleged in the Complaint, Nicholas DeCaro was subjected to various forms of harassment and denied a promotion and his marital status was a motivating factor which prompted Defendant to deny the promotion. *See Complaint at ¶¶ 24-28.* While it is established that a discrimination claim cannot be based only on the specific identify of one's spouse, here, Plaintiff does not allege that he was subjected to unlawful discrimination based on his marriage to a co-worker, but rather that the unlawful conduct complained of was the result of him being married. *Donato v. Am. Tel. & Tel. Co.,* 767 So.2d 1146, 1155 (Fla. 2000) (holding that the term "marital status" for discrimination purposes "means the state of being married, single, divorced, widowed, or separated, and does not include the specific identity or actions of an individual's spouse."). As set forth in further detail below, Plaintiff has set forth a cause of action of workplace discrimination and harassment based on his marital status

    **C.**    **Marital and Gender Discrimination under the Florida Civil Rights Act**

In Count I of the Complaint, Plaintiff makes out a *prima facie* case of discrimination under the FCRA by alleging that: 1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly-situated individuals outside his protected class were treated more favorably. *Valenzuela v. Globeground North America, LLC, 18 So.3d 17, 22* (Fla. 3d DCA 2009).

    **1.**    **Plaintiff is a member of a protected class**

Even though the general language of the FCRA follows that of Title VII, "The state

4

statute provides broader coverage than the federal one, as it includes provisions barring discrimination for age, handicap or marital status, as well as race, color, religion, sex and national origin." *Speedway*, 933 So.2d at 80. In this case Plaintiff has asserted both his sex and marital status as protected classes. *See Complaint at ¶¶ 17, 24, 28, 30-31, 37, and 41-44.*

> 2.  **Plaintiff was qualified for the position.**

In determining whether or not an employee is qualified for the job a court should look to the employee's actual performance. The employee must show that he was performing his job "at a level which met his employer's legitimate expectations." *Vickers v. Federal Express Corporation*, 132 F.Supp.2d 1371 (S.D. Fla. 2000) (internal citations omitted). In his Complaint, Plaintiff asserts that he began working for Defendant in Los Angeles California as a personal trainer and transferred to the South Beach location in December, 2013. At all times he was qualified to and performed his job duties within the legitimate expectations of his employer. *See Complaint at ¶¶ 18 and 21-23*. These factual assertions are sufficient to satisfy the pleadings requirements.

> 3.  **Plaintiff suffered an adverse employment action.**

An adverse employment action is "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir 2001) (emphasis in original). "A tangible employment action constitutes significant change in employment status such as hiring, *firing*, *failing* to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb-Edwards v. Orange Cnty Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (emphasis added). Again, Plaintiff satisfies this element by showing that he was denied a promotion for which he was otherwise qualified and that he was fired. *See Complaint at ¶¶ 27-*

*28, 34-35, 38, 42, 51, and 63*

### 4. Plaintiff has alleged sufficient facts to establish that he was treated less favorably than a similarly-situated individual outside his protected class.

The only basis for Defendant's dismissal motion on the discrimination claim is that Equinox incorrectly asserts that Plaintiff has not established a *prima facie* case of discrimination under the FCRA because he has not identified a similarly-situated individual with respect to his discrimination claims.

However, a plaintiff need not establish a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss. *Uppal v. Hosp. Corp. of Am.*, 482 F. Appx. 394, 396 (11th Cir. 2012); *Ashmore v. F.A.A.*, 2011 WL 3915752 at *2-3 (S.D. Fla. 2011). Furthermore, a plaintiff is not required to identify similarly situated employees for a discrimination claim to pass muster at the motion to dismiss stage. *Raja v. Englewood Cmty. Hosp.*, 2013 WL 4016518, at *3 (M.D. Fla. 2013). Also, a plaintiff need not identify by name a specific comparator to sufficiently plead a claim of discrimination. *Neale v. Fla. Dep't of Health*, 2013 WL 5703577, at *5 n.3 (M.D. Fla. 2013) ("It does not appear that Plaintiff is required to name specific employees at the pleading stage.") citing *Turner v. Fla. Prepaid Coll. Bd.*, 552 F.Appx. 829, 832 (11th Cir. 2013) (recognizing a plaintiff may create a triable issue concerning discriminatory intent through a convincing mosaic of circumstantial evidence); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."). Otherwise, Plaintiff has sufficiently pled that similarly situated employees were all given promotions and treated more favorably than Plaintiff. *Complaint at ¶ 27.*

**D.      Hostile work environment claim under the Florida Civil Rights Act**

In Count I, Plaintiff brings a claim under the Florida Civil Rights Act, which provides: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." This statutory provision provides for a claim of hostile work environment. *Russell v. KSL Hotel Corp.*, 887 So.2d 372, 377 (Fla. 3d DCA 2004). In order to establish a claim of hostile work environment under the FCRA, a plaintiff must allege the following: 1) that the employee belongs to a protected class; 2) that the employee was subjected to unwelcome harassment; 3) that the harassment was based on the employee's protected class; 4) that the harassment was severe enough to affect a term, condition, or privilege of employment and to create a discriminatorily abusive working environment; and 5) that the employer knew or should have know of the harassment and failed to intervene. *Id.* at 378.

**1.      Plaintiff is a member of a protected class**

See supra, Section III, paragraph C, sub-paragraph 1.

**2.      Plaintiff was subjected to unwelcome harassment**

In the context of a discrimination claim under the FCRA, "offensive conduct is not required to include sexual overtones in every instance . . . sexual harassment conduct includes conduct that is not clearly sexual in nature . . . and it is an incorrect assumption that only sexual conduct constitutes sexual harassment." *Russell*, 887 So.2d at 378-79. Although Defendant claims that "Plaintiff has proffered <u>no</u> <u>supporting</u> <u>facts</u> whatsoever," a cursory review of the Complaint shows the following assertions:

24. Commencing in January, 2014 Plaintiff's supervisors harassed him because of his sex and marital status and the harassment created a hostile work environment.
25. Plaintiff's supervisors instructed other employees not to refer any potential new members to him, resulting in reduced pay and loss of income.
26. When Plaintiff complained of this unfair treatment he was subjected to verbal abuse, derogatory comments and ridicule by his supervisors, in front of other employees and members.
27. Plaintiff was also denied a promotion while similarly situated employees were all given promotions and otherwise treated more favorably despite the fact that Plaintiff satisfied all requirements.
28. Defendant denied a promotion to Plaintiff and Plaintiff's sex and marital statuses were a motivating factor that prompted Defendant to deny the promotion.
29. Plaintiff's supervisors also engaged in bullying behavior and unjustifiably disciplined Plaintiff in an effort to have Plaintiff resign or transfer to another facility.
30. Defendant's supervisors also threatened Plaintiff's job by telling him that he could not work in the same facility as his wife.
31. However, at all times Defendant's supervisors were aware that Plaintiff was married and that Plaintiff and his wife worked as personal trainers at the same facility.
32. Defendant's supervisors were also aware of the fact that Defendant's company policy encourages and allows family members to work in the same facility.

Based on these facts, Plaintiff sets forth the necessary factual allegations to show that he was subjected to unwelcomed harassment.

### 3. The harassment was based on Plaintiff's protected class.

Throughout the Complaint, Plaintiff repeatedly asserts his good faith, objectively reasonable belief that he was subjected to harassment based on his sex and/or marital status. Under the FCRA, claims asserting "sexual harassment, hostile work environment, are fact-specific in the extreme." *Speedway*, 933 So.2d at 84. Contrary to Defendant's assertions, Plaintiff has proffered more than enough facts in support of his hostile work environment claim.

### 4. The harassment was severe.

Plaintiff has alleged that he was subjected to verbal abuse, derogatory comments and ridicule by his supervisors, in front of other employees and members and that his supervisors also engaged in bullying behavior and unjustifiably disciplined Plaintiff in an effort to have Plaintiff resign or transfer to another facility. This conduct commenced around January, 2014 and continued until Plaintiff's retaliatory termination in April, 2014. These factual allegations establish that Nicholas DeCaro was subjected to severe harassment over several months. Florida courts have recognized that under the FCRA, "verbal intimidation, humiliation, and threats of physical violence over a course of time (here continuously over a number of weeks) have been held sufficient to constitute hostile work environment and appropriate for determination by a jury." *Speedway*, 933 So.2d at 84. "Further, the court must look at the totality of the course of conduct and not micro-bites of behavior in isolation." *Id*. Defendant's contention that the behavior complained of does not amount to a hostile work environment cannot be adjudicated at the dismissal stage.

### 5. Defendant knew or should have know of the harassment and failed to intervene.

"The fifth element that a plaintiff must establish in hostile work environment cases is that the employer failed to take prompt and adequate remedial measures, after receiving actual notice or constructive notice of the harassing behavior by a co-worker. If an employer is aware of the sexual harassment and takes no remedial action or inadequate steps are taken to prevent recurrence of the harassment, then the employer can be held liable under section 760.10 for damages; compensatory for lost wages, and mental pain and suffering." *Speedway*, 933 So.2d at 86. As alleged in the Complaint, although Defendant knew of the complained of harassment, Equinox's intervention consisted solely of terminating Mr. DeCaro's employment within 24

hours of receiving his complaint of a hostile work environment. *See Complaint at ¶¶ 33 – 39 and 42*.

### E.     Retaliation under the Florida Civil Rights Act

In Count II, Plaintiff brings a claim under the Florida Civil Rights Act, which provides: "It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. sec 760.10(7). Thus the FCRA prohibits an employer from retaliating against an employee for enforcing his rights under the Act. *Russell* 887 So.2d at 379. Under the FCRA, "In order to establish a prima facie retaliation case, the plaintiff must demonstrate the following elements: 1) a statutorily protected expression; 2) an adverse employment action; and 3) a casual connection between the participation in the protected expression and the adverse action." *Id*. at 379.

####    1.     **Plaintiff engaged in statutorily protected expression.**

In Florida, the filing of a hostile work environment complaint with an employer constitutes statutorily protected expression. *Russell,* 887 So.2d at 380. In this case, "On April 24, 2014 Plaintiff engaged in protected activity by filing a written complaint of workplace harassment with Defendant through its corporate offices located in New York." *Complaint at ¶ 33.* Thus Plaintiff has alleged sufficient facts to satisfy the first element necessary to maintain his retaliation claim.

### 2. Plaintiff was subjected to an adverse employment action.

Plaintiff must also show "an adverse employment action." As alleged in the Complaint, "Upon learning of the harassment, Defendant then took an adverse employment action in that, rather than acting promptly to stop the behavior and prevent it from recurring or opening up an investigation, Defendant choose instead to retaliate against Plaintiff and terminated his employment effective April 25, 2014." *Complaint at ¶ 34.* These factual allegations – termination of employment - establish an adverse employment action. *Gossard v. JP Morgan Chase & Co.*, 612 F.Supp.2d 1242 (S.D. Fla. 2009) (recognizing that termination of employment is an adverse employment action) citing to *Davis v. Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001).

### 3. There is a casual connection between the statutorily protected expression and the adverse employment action.

Lastly, Plaintiff must show a casual connection between his participation in protected expression and the adverse employment action. "In order to satisfy the 'casual connection' prong of a prima facie retaliation case [under the FCRA], a plaintiff must, at a minimum generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Russell,* 887 So.2d at 379. As alleged in Paragraphs 33 and 34 of Plaintiff's Complaint, Nicholas DeCaro filed a written complaint of workplace harassment with his employer on April 24, 2014 and the following day, April 25, 2014, Mr. DeCaro was informed that his employment was being terminated. Furthermore, Plaintiff also alleges that, "At the time that Plaintiff was fired Defendant had actual knowledge of the harassing behavior Plaintiff had been subjected to during a period of approximately five months." *See Complaint at ¶ 38.*

Furthermore, in a relation claim under the FCRA, "A plaintiff can establish a prima facie case of causation through 'mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action.' Temporal proximity must be 'very close.'" *Smart v. City of Miami Beach*, 1 F.Supp.3d 1350 (S.D. Fla. 2014). In his Complaint, Plaintiff alleges that "During his tenure with Defendant, Plaintiff was subjected to continuous and systematic workplace harassment based on his sex (male) and marital status and the day after he filed a written complaint of a hostile work environment, Defendant retaliated against him by terminating his employment, in violation of company policy and the FCRA." *See Complaint at ¶ 63*. One day between the protected activity and adverse employment action should be deemed sufficiently close in temporal proximity to satisfy the causation prong of the retaliation claim.

F.     **Injunctive Relief under the Florida Civil Rights Act**

The court's jurisdiction is based solely on diversity of citizenship. Under these circumstances, the Court should be guided by state law, particularly Florida Supreme Court precedent, as to the elements of a cause of action for injunctive relief. "To obtain a permanent injunction, the petitioner must 'establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief.'" *Liberty Counsel v. Florida Bar Bd of Gov's*, 12 So.3d 183, fn 7. (Fla. 2009) citing to *K.W. Brown & Co. v. McCutchen*, 819 So.2d 977, 979 (Fla. 4th DCA 2002); see also, *Dania Jai Alai Int'l, Inc. v. Murua*, 375 So.2d 57, 58 (Fla. 4th DCA 1979).[1]

---

[1] Contrary to Defendant's assertions, Plaintiff does not seek a temporary injunction; therefore, there is no need for him to allege or prove that there is "a substantial likelihood of success on the merits" or that "injunctive relief will serve the public interest." See, *Liberty Counsel v. Florida Bar Bd of Gov's*, 12 So.3d 183, fn 7. (Fla. 2009) (discussing elements of a temporary injunction versus a permanent injunction); see also, *Reform Party of Fla. v. Black*, 885 So.2d 303, 305 (Fla. 2004).

      1.     **The FCRA provides a clear legal right to injunctive relief**

The Florida Civil Rights Act provides for injunctive relief. Specifically, the relevant provisions are as follows: "In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay." Fla. Stat. sec. 760.11(5); see also, *Rasmussen v. Central Florida Council Boy Scouts of America, Inc.*, 2009 WL 320855, at *10 (M.D. Fla. 2010) ("The FCRA permits an award of compensatory and punitive damages in addition to the issuance of an injunction."); *Rivers v. Washington County Bd. Of Educ.*, 770 F.2d 1010, 1012 (11thCir. 1985) ("a district court has broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination."). *EEEOC v. Joe's Stone Crab, Inc.,* 15 F. Supp. 2d 1364, 1380 (S.D. Fla. 1998) (toward the end of preventing past discrimination from recurring, victims of employment discrimination may also be entitled to an injunction against future discrimination).

In his Complaint, Plaintiff asserts that he seeks injunctive relief under the FCRA. *See Complaint at ¶ 77.* Plaintiff also asserts that Fla. Stat. sec. 760.11(5) establishes a legal right to the requested remedy. *See Complaint at ¶ 83.* Based on the allegations in the Complaint and controlling case law, Plaintiff has a clear legal right to injunctive relief.

      2.     **Plaintiff does not have an adequate remedy at law and irreparable harm will arise absent injunctive relief.**

In his Complaint, Plaintiff does not seek an "obey the law" injunction as Defendant suggests in its dismissal motion. Rather, Plaintiff seeks specific injunctive remedies which courts have recognized as being available in the context of an employment discrimination claim. *See Complaint at ¶¶ 80 and 84; see also, Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863-64 (7th Cir. 2001) ("A court may use expungement as a means of removing the stain of the employer's

discriminatory actions from the plaintiff's permanent work history.") citing to *Sherkow v. Wisconsin Dept. of Pub. Instruction*, 630 F.2d 498, 504 (7th Cir. 1980) (stating that the district court properly ordered the defendant to expunge from the plaintiff's personnel file a poor performance evaluation written in retaliation for the plaintiff's public exercise of her right to be free from gender discrimination); *Knapp v. Whitaker*, 757 F.2d 827, 846-47 (7th Cir. 1985) (stating that after the jury found that a school unlawfully had terminated a teacher for engaging in constitutionally protected speech, the district court properly ordered that all documents relating to the constitutionally protected speech and the retaliatory termination be expunged from the teacher's personnel record). Indeed, in such cases were an employee prevails on a discrimination claim, expungement is required. "By refusing to expunge discriminatory or retaliatory discipline from a successful plaintiff's personnel file, a court may force the plaintiff to bear the brunt of her employer's unlawful conduct for the rest of her working career, which certainly contravenes the goal of making a plaintiff whole through equitable remedies." *Bruso*, 239 F.3d at 863-64.

It should be noted that approximately two weeks after Plaintiff was fired, Nicholas DeCaro was contacted by Defendant's Senior HR Manager and was informed that his termination was due to "differences in personality and management style." However, several months later during the administrative proceedings before the Florida Commission on Human Relations, this same Senior HR Manager, along with two of Plaintiff's former supervisors, all filed sworn affidavits accusing Plaintiff of having stolen from Equinox and describing Nicholas

DeCaro as a thief and a liar.[2] The allegations of theft and dishonesty were raised by Defendant for the first time during the administrative proceedings.[3]

Should Plaintiff ultimately prevail on his discrimination and/or retaliation claims, but Equinox be allowed to continue to assert that Plaintiff was discharged for stealing from the company and to refer to Nicholas DeCaro as a liar and a thief, as they have already done under oath in the administrative proceedings, then the ongoing damage to Plaintiff's career will be immeasurable.[4] Under these circumstances, Plaintiff does not have an adequate remedy at law as monetary damages alone will not suffice to protect Plaintiff's professional reputation from Defendant's unsubstantiated assertions that Nicholas DeCaro is a liar and/or a thief. Absent injunctive relief Plaintiff will continue to suffer irreparable harm. "Irreparable injury is an injury of such nature that it cannot be redressed in a court of law; an injury for which monetary compensation will not suffice." *Gonzalez v. Benoit*, 424 So.2d 957, 959 (Fla.3d DCA 1983) *receded from on other grounds*, 434 So.2d 51 (Fla. 3d DCA 1983).

Based on the facts asserted in the Complaint, Plaintiff's claim for injunctive relief has been properly pled under Florida law and Nicholas DeCaro is clearly entitled to such relief should he prevail in his discrimination and/or retaliation claim.

---

[2] According to these affidavits, Plaintiff's alleged wrongdoing had been discovered prior to his separation but yet the alleged theft was not mentioned in Equinox's post-termination e-mail to Mr. DeCaro responding to his claims of workplace harassment.

[3] To prove pretext, a plaintiff has to show that his employer's explanation is unworthy of credence. *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). A plaintiff may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. *Brooks v. Cnty Comm'n of Jefferson Cnty*, 446 F.3d 1160, 1163 (11th Cir. 2006). It is Plaintiff's contention that the fact that Equinox's reason for terminating Mr. DeCaro has gone from "differences in personality and management style" to "dishonesty and theft" is nothing more than a pretext for discrimination.

[4] As alleged in the Complaint, Plaintiff worked for Defendant as a personal trainer for approximately one year. However, prior to his employment with Equinox, Plaintiff had been a personal trainer and gym manager for over ten years and he currently holds multiple nationally recognized certifications which allow him to engage in his chosen career.

## IV. Conclusion

WHEREFORE, Plaintiff, NICHOLAS DECARO, respectfully requests that the Court enter an order denying Defendant, EQUINOX HOLDINGS, INC.'S Motion to Dismiss Complaint.

Dated: March 6, 2015

                                      Respectfully submitted,

                                      By  */s/ Ronnie Guillen*_____
                                            Ronnie Guillen
                                            Fla. Bar No. 842001
                                            E-mail: rg@wadsworth-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on March 6, 2015 on all counsel or parties of record on the Service List below.

By /s/Ronnie Guillen_____
Ronnie Guillen, Esq.
Fla. Bar No. 842001
E-mail: rg@wadsworth-law.com
Christopher W. Wadsworth, Esq.
Fla. Bar No. 78026
E-Mail: cw@wadsworth-law.com
Wadsworth Huott, LLP
14 NE 1st Avenue
10th Floor
Miami, Florida 33132
Telephone: 305-777-1000
Facsimile: 305-777-1001
Attorneys for Plaintiff

## SERVICE LIST

Christine L. Wilson, Esq.
E-mail: wilsonc@jacksonlewis.com
Fla. Bar No. 143588
Anisley Tarragona, Esq.
E-mail: Anisley.Tarragona@jacksonlewis.com
Fla. Bar. No. 051626
c/o Jackson Lewis PC
One Biscayne Tower
Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466
Attorneys for Defendant